IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| AMBER L. KRAUS, | |
|---|---|
| Plaintiff, | 4:18CV3082 |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security; | MEMORANDUM AND ORDER |
| Defendant. | |

Plaintiff Amber Kraus ("Plaintiff") claims in this Social Security appeal that the Commissioner's decision to deny her applications for disability insurance benefits and supplemental security income is contrary to law and not supported by substantial evidence. Having considered all arguments and materials presented, and for the reasons explained below, the Commissioner's decision will be affirmed.

**PROCEDURAL BACKGROUND**

On July 9, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income. (TR. 159). Plaintiff's application was denied initially and on reconsideration. (TR. 177). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on March 7, 2017. (TR. 156).

On May 23, 2017, the ALJ issued an unfavorable decision. (TR. 171). The ALJ's decision evaluated Plaintiff's claim under the five-step sequential analysis prescribed by the Social Security Regulations.[1]  *See* 20 C.F.R. § 416.920. The ALJ found Plaintiff had the severe impairments of

---

1 The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets

asthma, anxiety, depression, and a history of substance abuse. (TR. 161). The ALJ formulated Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [Plaintiff] as the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to perform work away from fumes, odors, astringents, and other types of items commonly associated with someone who has a breathing problem. She is capable of performing simple work due to some problem with maintaining attention and concentration for extended periods needed for more complex work. [Plaintiff] is able to understand and follow simple instructions and is able to get along with supervisors, peers, and the general public as she has worked at those types of positions in the past. [Plaintiff] is able to make simple work related decisions and adjustments to changes in the work setting. Finally, [Plaintiff] is able to perform work away from concentrated cold and heat.

(TR. 164). The ALJ found that Plaintiff does not have any past relevant work but determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (TR. 170-71.) These jobs include cashier, router, and counter clerk. (TR. 171.)

Plaintiff requested review of the ALJ's decision by the Appeals Council. (TR. 284.) The request was denied. (TR. 1.) Having been denied review by the Appeals Council, the ALJ's decision stands at the final decision of the Commissioner of Social Security.

---

or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

[Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)](citations omitted).

2 "RFC" is defined as what a claimant "is able to do despite limitations caused by all of the claimant's impairments." [Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)](citation omitted).

## STANDARD OF REVIEW

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *See Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id*. at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

## ANALYSIS

1. **Opinion Evidence**

Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of her treating physicians, Dr. Walter Duffy ("Dr. Duffy") and Dr. Kirk Kinberg ("Dr. Kinberg"). Dr. Kinberg is Plaintiff's treating physician in the specialty of asthma, allergy, and immunology. (TR. 77.) Dr. Kinberg, who has treated Plaintiff since 2012, opined that Plaintiff is unable to work due to asthma. Dr. Duffy, who, according to Plaintiff, has been her treating mental health physician for fifteen years, opined that Plaintiff cannot work due to her mental impairments. In discounting these treating physicians' opinions, the ALJ stated, among other things, that the opinions did not provide any "function by function analysis" and were "vague and imprecise." (TR. 169.)

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quotation omitted). However, a treating physician's opinion does not automatically control because the record must be evaluated as a whole. *Id.* "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the

3

credibility of such opinions." *Id*. (quotation omitted). Still, "[w]hether granting a treating physician's opinion substantial or little weight . . . the commissioner must always give good reasons . . . for the weight she gives." *Rentzell v. Berryhill*, Case No. 4:17CV3037, 2018 WL 2050559, at *8 (D. Neb. May 1, 2018) (internal quotations and citations omitted).

Dr. Duffy's opinion is set out in check-box forms dated July 9, 2014 and July 13, 2016, respectively. (TR. 166; TR. 660-61.) In these forms, Dr. Duffy checked boxes to indicate Plaintiff is unable to work but provided no explanation for his conclusion. (TR. 660-61.) The ALJ concluded that Dr. Duffy's lack of specificity as to clinical findings diminished the persuasiveness of his opinion. This is a proper basis upon which to discount a treating physician's opinion. *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (stating that conclusory opinions of treating physicians do not compel a finding of disability and ALJ acted within acceptable zone of choice in declining to give them controlling weight); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements").

Moreover, as explained by the ALJ, Dr. Duffy's opinion is inconsistent with his own treatment notes. *See Davidson*, 578 F.3d at 843 ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes"). Dr. Duffy's treatment notes show that on May 13, 2014, Plaintiff had good concentration and that her memory was intact. (TR. 564.) Dr. Duffy's records further show that in June, 2014, Plaintiff reported that she was feeling good. (TR. 568.) In another visit on December 19, 2014, Plaintiff reported to Dr. Duffy that her mood had been alright. (TR. 645.) Following an appointment on March 13, 2015, Dr. Duffy noted that Plaintiff's condition was a little improved. (TR 673.) In June, 2015, Plaintiff informed Dr. Duffy that she was feeling good and sleeping well. (TR. 712.) In February, 2017, Plaintiff told Dr. Duffy that her mood was okay and that she was not experiencing much anxiety. (TR. 786.) The record supports the ALJ's conclusion that Dr. Duffy's treatment notes are inconsistent with his opinion that Plaintiff is unable to work.

Substantial evidence likewise supports the ALJ's decision to discount Dr. Kinberg's opinion. Dr. Kinberg's opinion is set out in a letter dated March 1, 2017. (TR. 663.) Dr. Kinberg stated in

the letter that Plaintiff has a history of asthma and listed some of her symptoms. (TR. 663.) The letter indicates that Plaintiff's asthma triggers include fumes, minimal exertion, irritants, scents, cold air, and weather changes. (TR. 166; TR. 663.) Dr. Kinberg concluded the letter by stating that Plaintiff is unable to work on a regular basis. (TR. 663.)

Like Dr. Duffy, Dr. Kinberg failed to provide detail regarding Plaintiff's condition or explain the basis for his opinion. *See [Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)](#)* ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner"). Moreover, it is worth noting that even though the ALJ did not accept Dr. Kinberg's conclusion that Plaintiff is unable to work, he did not totally disregard Dr. Kinberg's opinion. The ALJ found that asthma was a severe impairment and incorporated certain asthma triggers identified by Dr. Kinberg in Plaintiff's RFC, including fumes, odors, and concentrated cold.

The record likewise supports the ALJ's finding that Dr. Kinberg's records do not reflect limitations severe enough to warrant the conclusion that Plaintiff cannot work. In April, 2014, following an attack for shortness of breath, Plaintiff told Dr. Kinberg that she had quickly recovered after a nebulizer treatment. (TR. 588.) At that time, her physical examination showed clear lungs. (TR. 588.) In September, 2014, Dr. Kinberg indicated in his treatment notes that Plaintiff's lungs were clear and that she had a normal peak flow rate. (TR. 590.) In January, 2017, Dr. Kinberg found Plaintiff had shown improvement in her shortness of breath. (TR. 166; TR. 834.) On that visit, Dr. Kinberg noted Plaintiff had fairly good control of her asthma. (TR. 166; TR. 834.) The inconsistency between Dr. Kinberg's treatment notes and his opinion that Plaintiff is totally unable to work undermines his credibility.

Plaintiff argues that the ALJ impermissibly relied on the opinions of state agency physicians because these providers did not have a treatment history with Plaintiff and only provided opinions by reviewing records and completing agency forms. The ALJ ascribed "some weight" to the opinion of the state agency medical physical consultants and "great weight" to the state agency medical psychological consultants. Plaintiff's argument in this regard is without merit.

5

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-9p, 1996 WL 374180, at *2 (July 2, 1996). "When the ALJ has given good reasons for rejecting the opinion of a treating physician, it is completely appropriate for her to rely on better-explained and more consistent expert medical opinions from agency doctors." *Brown v. Colvin*, No. 4:13-CV-368-DGK-SSA, 2014 WL 1687430, at * 3 (W.D. Mo. Apr. 29, 2014). In this case, as explained above, the ALJ discounted the treating physicians' opinions and gave good reasons for doing so. It was appropriate for the ALJ to rely on opinions from state agency consultants.

Even though the consultants did not actually examine Plaintiff, their assessments are consistent with other evidence of record. The consultants provided explanations for their opinions and cited facts upon which they based their conclusions. (TR. 110-11; TR. 121-22; TR. 134-35; TR. 146-47.) Moreover, the ALJ did not adopt the state agency consultants' opinions in their entirety. The ALJ noted that although the state agency medical physical consultants opined that Plaintiff could perform work at all exertion levels, he was giving "some weight" to their opinions and limiting Plaintiff to a reduced range of light work. (TR. 111, 122, 135, 147, 169). In other words, the ALJ relied on the entirety of the record in making his decision, not just the agency experts. The ALJ did not err in considering these opinions along with the medical evidence as a whole. *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) ("The ALJ had a duty to evaluate the medical evidence as a whole").

For the reasons set out above, the Court finds that the ALJ properly evaluated the evidence in assessing Plaintiff's RFC. The ALJ thoroughly considered and discussed the evidence in determining Plaintiff's impairments and limitations. The ALJ's conclusions are supported by substantial evidence appearing on the record as a whole.

    **2.**    **Hypothetical Question**

Vocational expert Holly Berquist Neal ("Neal") testified at the administrative hearing. During the hearing, the ALJ posed two hypothetical questions. In the first hypothetical, the ALJ asked Neal to consider an individual who could lift up to twenty pounds on occasion, ten pounds on

a frequent basis, and sit for six hours or stand for six hours in an eight-day workday in a workplace that was away from fumes, odors, astringents, and other types of items commonly associated with anyone who has a breathing problem. (TR. 82.) The ALJ added to the first hypothetical that the individual could understand and follow simple instructions; get along with supervisors, peers, and the general public; adjust to changes in the work setting; and make simple work-related decisions. The individual would also need to stay away from concentrated heat or cold. (TR. 82-83.) To this first question, Neal responded that such an individual could work as a cashier, router, and counter clerk. (TR. 82.)

The second hypothetical added to the first question a requirement that the individual would need to take a fifteen to twenty-five minute break for breathing treatments at undisclosed times one to three times per week. (TR. 83-84.) This restriction was seemingly added due to Plaintiff's testimony that she needed a fifteen to twenty-five minute nebulizer treatment every three to four hours. (TR. 83-84.) To this question, Neal responded there would be no competitive employment. (TR. 84.)

Plaintiff argues that the ALJ erred because he did not accept Neal's testimony that a hypothetical individual could not work if she required fifteen to twenty-five minute breaks one to three times per week for nebulizer treatments. Plaintiff's argument is unpersuasive. The ALJ was not obligated to adopt Neal's response to a hypothetical that included limitations not supported by the record. An ALJ may exclude any alleged impairments that he has properly rejected as untrue or unsubstantiated. See *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). The first hypothetical question, to which Neal responded that competitive employment existed, was based upon the ALJ's ultimate determination of Plaintiff's RFC. The ALJ was free to rely upon this testimony. An ALJ may rely on testimony by a vocational expert to hypothetical questions that include the substantially supported RFC limitations. See *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Because the hypothetical was based upon the ALJ's determination of [the claimant's] residual functional capacity, which is supported by the record, the hypothetical was properly framed and the ALJ's reliance on [the vocational expert's] testimony was appropriate"); *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ") (quotation omitted). Plaintiff's assertion that she requires a nebulizer

7

treatment every three to four hours or would require breaks for nebulizer treatments is not substantiated by the record. Therefore, substantial evidence supports the ALJ's finding that Plaintiff is not disabled.

## CONCLUSION

For the reasons stated above, and after careful consideration of each argument presented in Plaintiff's brief, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for an Order Reversing the Commissioner's Decision (Filing No. 22) is denied. The Motion to Affirm Commissioner's Decision (Filing No. 24) is granted. Judgment will be entered by separate document providing that the decision of the Commissioner is affirmed.

Dated this 26th day of August, 2019.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge